[Cite as *In re M.A.*, 2018-Ohio-209.]

STATE OF OHIO, MONROE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | ) ) ) ) | |
| M.A., C.A., S.A. | ) ) ) ) ) ) | CASE NOS. 17 MO 0004<br>17 MO 0005<br><br>OPINION |

CHARACTER OF PROCEEDINGS:   Civil Appeal from the Court of Common Pleas, Juvenile Division, of Monroe County, Ohio
Case No. 5218

JUDGMENT:                              Affirmed.

APPEARANCES:
For Mother-Appellant              Attorney Brent Clyburn
                                             604 Sixth Street
                                             Moundsville, West Virginia 26041

For Grandmother-Appellant      Attorney Margaret Boyd LaPlante
                                             139 West Eighth Street
                                             P.O. Box 640
                                             Cambridge, Ohio 43725-0640

For MCDJFS-Appellee             Attorney James Peters
                                             County Prosecutor
                                             Attorney Jamie Riley
                                             Assistant Prosecutor
                                             101 North Main Street, Room 15
                                             Woodsfield, Ohio 43793

JUDGES:

Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: January 22, 2018

DeGENARO, J.

**{¶1}** In separate cases, mother and maternal grandmother appeal the juvenile court judgment which granted permanent custody of the children to the Monroe County Department of Job and Family Services. Because the children have been in the custody of the Agency for more than 12 consecutive months and the grant of custody is in their best interests, the judgment is affirmed.

### Facts and Procedural History

**{¶2}** M.A., C.A., and S.A., ages 6, 8, and 5 respectively, were taken into emergency custody by MCDJFS on May 12, 2015. The Agency filed a complaint with the juvenile court alleging that all three children were abused and neglected. An adjudicatory hearing was held on July 16, 2015, and the children were found to be abused and neglected. They remained in the temporary custody of the Agency. Immediately following the adjudicatory hearing Mother was arrested on a warrant.

**{¶3}** A case plan was filed that included Mother. Grandmother requested to be included but the juvenile court denied this at disposition noting she had no legally recognized right to be included or to visitation. On November 12, 2015, Grandmother filed an objection contending that since the children had lived with her for about a year and a half before being removed, she needed to be included on the case plan. The juvenile court later reconsidered, ordered that she remain a party, and directed the Agency to include her on the case plan.

**{¶4}** On May 11, 2016, a dispositional review was held. The juvenile court noted that Mother was incarcerated, charged as a persistent felony offender, and would not be released from jail in the near future. Grandmother expressed her desire to have the minor children returned to her care; however, her son (Uncle), a diagnosed paranoid schizophrenic who refuses to take his medication, remained living at her residence. Uncle was usually armed with a firearm or sword, and the children feared him. The court continued the children in care of their foster family.

**{¶5}** On August 9, 2016, a letter to the judge was filed with the juvenile court from Mother. She informed the court that she "signed on 5 years" and that she had an additional hearing on September 6, 2016, where she would find out if she could

get probation. She requested additional time for her case.

**{¶6}** On August 22, 2016, the Agency filed a motion for permanent custody asserting that the children could not be placed with the Mother or Grandmother within a reasonable time, that the children had been in the Agency's custody for more than 12 of 22 months, and that permanent custody was in the best interests of the children.

**{¶7}** On September 21, 2016, the juvenile court conducted in camera interviews of the minor children at the request of the guardian ad litem. Days later Mother filed a motion for continuance as she was released from prison and attempting to secure housing, find a job, and start counseling. The court granted this motion and continued the permanent custody hearing from September 29, 2016 to November 4, 2016. At the permanent custody hearing on November 4, 2016, Mother made a motion to continue the matter yet again to give her additional time, and the court continued the matter to February.

**{¶8}** On December 7, 2016, a deputy from the county sheriff's office accompanied the caseworker to Grandmother's house. Grandmother exited her home to speak with the caseworker and a male (later identified as Uncle J.A.) began shouting obscenities from inside of the house. Fearing for their safety, the deputy and caseworker left the property without securing a urine sample from Mother to conduct a drug test.

**{¶9}** On February 3, 2017, a hearing was held on the permanent custody motion. Ten witnesses testified including the guardian ad litem, Mother, Father, and the Agency caseworker. Grandmother did not testify but was represented by counsel. On February 27, 2017, the juvenile court terminated Mother and Father's parental rights and awarded permanent custody to the Agency. From this decision, Mother and Grandmother preserved timely appeals that will be discussed together.

### Grandmother's Assigned Errors

**{¶10}** In her five assignments of error, Grandmother asserts:

The Monroe County Department of Job and Family Services

failed to prove by clear and convincing evidence that permanent custody was in the best interests of the minor children, and the court abused its discretion in allowing hearsay testimony over objection, and therefore the grant of permanent custody was against the manifest weight of the evidence

The Court abused its discretion by making findings of fact completely unsupported by the testimony and evidence presented.

The Court abused its discretion in requiring the Guardian ad Litem to render an opinion after the termination of the Agency's case, when the Guardian ad Litem testified she would like to hear the remaining testimony prior to rendering a decision, and abused its discretion by failing to admit the report of the Guardian ad Litem which stated that the children should remain in the temporary custody of the agency.

The Monroe County Department of Job and Family Services acted in bad faith, as it did not make reasonable efforts to reunify the children with either Mother, Father, or Grandmother.

Appellant [Grandmother] received ineffective assistance of counsel, which prejudiced Appellant in the permanent custody action.

{¶11} Grandmother does not have standing as she did not follow the proper procedural requirements. Further, she directly informed the trial court she did not want custody of the children; she wanted Mother to be awarded custody.

{¶12} Pursuant to R.C. 2151.353, Grandmother was required to file a motion for custody if she wanted to seek custody of her grandchildren:

"[I]f a child is adjudicated an abused, neglected, or dependent child, the court may * * * award legal custody of the child to either parent or to any

other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child."

The Twelve District recently stated:

As the Supreme Court of Ohio explained in *In re H.W.*, "The law does not provide grandparents with inherent legal rights based simply on the family relationship." *In re H.W.*, 114 Ohio St.3d 65, 2007–Ohio–2879, at ¶ 9, citing *In re Whitaker*, 36 Ohio St.3d 213, 215 (1988). However, there are avenues through which grandparents can acquire legal rights that would support a motion to intervene. See *id.* For example, a statute that Gibson cites on appeal, R.C. 3109.12, allows grandparents of a child born to an unmarried woman to file a complaint requesting reasonable companionship or visitation rights with the child. See *id.* "Grandparents may also acquire legal rights through other means, such as filing a motion for temporary or permanent custody, which would then give them standing to intervene in a custody hearing." *Id.*, citing *In re Schmidt*, 25 Ohio St.3d 331, 336 (1986). However, as a general rule, avenues such as these are the only avenues through which grandparents may obtain rights relative to their grandchildren. *Id.*

*In re B.L.*, 3d Dist. Nos. 1-15-65, 1-15-66, 1-15-67, 1-15-68, 2016–Ohio–2982, ¶ 19.

{¶13} Grandmother did not file a motion for custody, did not testify at trial, and expressly informed the juvenile court she did not want custody of the children. Her entire appeal advances arguments pertaining to how the court erred in regards to Mother and Father.

{¶14} "[A] party ordinarily cannot appeal an alleged violation of another party's rights. However, '[a]n appealing party may complain of an error committed against a nonappealing party when the error is prejudicial to the rights of the appellant.' " *In re Mourey*, 4th Dist. No. 02CA48, 2003–Ohio–1870, ¶ 20 citing *In re Smith*, 77 Ohio

App.3d 1, 13, 601 N.E.2d 45 (6th Dist.1991); *In re Hiatt*, 86 Ohio App.3d 716, 721, 621 N.E.2d 1222 (4th Dist.1993). Accordingly, her appeal in its entirety is meritless as she lacks standing to proceed.

## Mother's Assigned Error

**{¶15}** In her sole of assignment of error, Mother asserts:

> The trial court's decision to award permanent custody of the appellant [Mother]'s children to the appellee, Monroe County Department of Job and Family Services, was against the manifest weight of the evidence as it was not supported by clear and convincing evidence.

**{¶16}** We review a trial court's decision terminating parental rights and responsibilities for an abuse of discretion. *In re Sims*, 7th Dist. No. 02–JE–2, 2002-Ohio-3458, ¶ 36. "An abuse of discretion means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough." *Downie v. Montgomery*, 7th Dist. No. 12 CO 43, 2013–Ohio–5552, ¶ 50.

**{¶17}** "In order to grant permanent custody to the agency, the trial court must make one of the five findings set out in R.C. 2151.414(B)(1)(a) through (e) and make a best interest finding." *Matter of D.F.*, 7th Dist. No. 16 NO 0439, 2017-Ohio-2711, ¶ 20. Clear and convincing evidence produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985).

**{¶18}** The juvenile court made a finding pursuant to R.C. 2151.414(B)(1)(d):

> [T]he court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that

filed the motion for permanent custody and that any of the following apply:

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * *.

**{¶19}** The juvenile court correctly determined that the children have been in the care of the Agency for more than 15 continuous months. Mother concedes this point, but argues that since the Agency listed alternative statutory grounds in the motion for permanent custody that it "put into play an analysis under section R.C. 2151.414 (B)(1)(a) of the Ohio Revised Code; that is to say, the appellee, per its motion, had to show by clear and convincing evidence that the children could not be placed with their mother within a reasonable time; and furthermore, that it was in the children's best interest that appellee be granted permanent custody."

**{¶20}** This is an incorrect reading and interpretation of the statute. R.C. 2151.414(B)(1) expressly states: "Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that **any** of the following" subsections apply.

**{¶21}** The Agency need only prove one of the grounds, not all of them. Accordingly, as the 12 of 22 ground had been met, the Agency next had to demonstrate by clear and convincing evidence that permanent custody was in the best interest of the children.

In determining whether it is in the child's best interest to grant custody to the agency, the court shall consider:

(a) The interaction and interrelationship of the child with the child's

parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, * * * with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child [regarding certain crimes, withholding food or medical treatment, drug and alcohol abuse, abandonment, and having previously had parental rights terminated].

R.C. 2151.414(D)(1).

**{¶22}** The juvenile court recognized that the Agency used reasonable efforts to reunify the children with their parents, which Mother does not challenge on appeal. Regarding the statutory best interest factors, the court did not go into detailed findings as to each factor.

[A]lthough it would have been the better practice to make specific findings, the trial court was not required to make specific findings as to each best interest factor as appellant alleges.

Other courts have found that the trial court's indication that it considered the R.C. 2151.414(D)(1) best interest factors is sufficient. For instance, in *In re M.R.*, 3d Dist. No. 4–12–18, 2013–Ohio–1302, ¶ 78, the court found that, "[w]hile it is far from the better practice, we find

that the trial court's citation to the appropriate statute when making its best interest finding meets its obligation, albeit to the minimum extent possible, in demonstrating that the R.C. 2151.414(D) factors were considered." And in *In re R.H.*, 9th Dist. Nos. 11CA010002, 11CA010003, 2011–Ohio–6749, ¶ 18, the court found: "In this case, although the better practice would have been for the trial court to more fully articulate its reasoning for its ultimate best interest finding, Father has failed to demonstrate that the trial court committed reversible error by failing to do so."

*Matter of D.F.*, 7th Dist. No. 16 NO 0439, 2017–Ohio–2711, ¶ 38-39

{¶23} As to the first statutory factor, the court noted that neither Father nor Grandmother wanted custody of the children. Both wanted Mother to be awarded custody. Prior to the children being removed from Grandmother in May of 2015, Mother had not seen the children for five to six months. After the removal Mother left Ohio and saw the children sporadically. She was incarcerated from November of 2015 until September of 2016. After she was released she visited with the minor children in a supervised setting. The caseworker, foster mother, and GAL testified that the children clearly love their Mother. The minor children's physical and mental well-being has improved while under the care of their foster parents.

{¶24} As to the second statutory factor, the court conducted in camera interviews of the children. While they expressed love for Mother and desire to see her, they do not want regularly scheduled visits with her. Further, they expressed a strong desire to remain with their foster parents. The mere discussion of returning to Mother created anxiety for the children. Regarding the third statutory factor, the court found that the Agency received custody of the children on May 12, 2015, and filed for permanent custody on August 22, 2016, resulting in the children being in the Agency's custody for approximately 15 months at the time of the filing of the motion.

{¶25} As to the fourth statutory factor, there was not direct language in the judgment entry regarding this factor. However the judge stated that he considered all

of the best interest factors when reaching his decision. The fifth statutory factor, dealing with certain convictions and other issues, does not apply in this case.

**{¶26}** In addition to the statutory factors, the court made many other findings noting Mother left her children with Grandmother and Uncle, an unmedicated paranoid schizophrenic, for five to six months. She has substance abuse issues. She spent a majority of this case incarcerated as a convicted felon. Upon her release from jail she made numerous poor decisions including beginning a relationship with a man with numerous criminal convictions who posed a danger to her and the children. Further, she was dependent on him for income to maintain her household as she had several jobs in a short period of time but could not maintain any of them. As of the hearing date, she had no job, no license, no car, and no source of income after breaking up with her boyfriend shortly before the permanent custody hearing.

**{¶27}** As the children were in the temporary custody of the agency for 12 or more months of a consecutive 22–month period and the grant of permanent custody was in their best interests, the juvenile court's decision to terminate the parental rights of Mother was supported by clear and convincing evidence. Accordingly, Mother's sole assignment of error is meritless, and the juvenile court's judgment is affirmed.

Waite, J., concurs.

Robb, P. J., concurs.