[Cite as *In re A.T.*, 2019-Ohio-5038.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

IN RE:

    A.T.,

    CASE NO. 3-19-07

ADJUDGED DEPENDENT CHILD.

    **O P I N I O N**

[JAMES TEMPLE, ET AL. - APPELLANTS]

---

IN RE:

    G.S.,

    CASE NO. 3-19-08

ADJUDGED DEPENDENT CHILD.

    **O P I N I O N**

[JAMES TEMPLE, ET AL. - APPELLANTS]

---

IN RE:

    M.T.,

    CASE NO. 3-19-09

ADJUDGED DEPENDENT CHILD.

    **O P I N I O N**

[JAMES TEMPLE, ET AL. - APPELLANTS]

---

Appeals from Crawford County Common Pleas Court
Juvenile Division
Trial Court Nos. C 2175090 / F 2195063, C 2175091 / F 2195064 and
C 2175092 / F 2195065

**Judgments Affirmed**

**Date of Decision: December 9, 2019**

Case Nos. 3-19-07, 3-19-08 and 3-19-09

APPEARANCES:

*G. Scott McBride* **for Appellants**

*Michael J. Wiener* **for Appellee**

---

**WILLAMOWSKI, J.**

**{¶1}** Although originally placed on our accelerated calendar, we have elected pursuant to Loc.R. 12(5) to issue a full opinion in lieu of a summary judgment entry. Appellants James ("James") and Robin ("Robin") Temple (collectively "the Temples") appeal the judgments of the Juvenile Division of the Crawford County Court of Common Pleas for denying their motion to intervene. For the reasons set forth below, the judgments of the trial court are affirmed.

*Facts and Procedural History*

**{¶2}** The Temples are the maternal grandparents of A.T., G.S., and M.T. (collectively "the children"). Tr. 6. Their daughter, Nichole Temple ("Nichole"), is the children's mother. Tr. 48. Nichole lived with the Temples for most of the time that she had children. Tr. 7. During this time, the Temples provided financial support for the children. Tr. 7. They also helped purchase clothing for the children and drove the children to school. Tr. 7-8. During this time, the Temples never sought custody of the children because their daughter (the children's mother) threatened to cut off the Temples' access to the children. Tr. 15.

-2-

{¶3} On June 28, 2017, Crawford County Job and Family Services ("CCJFS") filed three complaints that requested temporary custody of the children. Docket 1: 1A, 1B, 1C.[1] At this time, the children were not living with the Temples and were living with Nichole. Tr. 17. However, around this time, the Temples' house was damaged by a fire and was rendered an unfit place for the children to live. Tr. 19. On August 14, 2017, the trial court determined that A.T., G.S., and M.T. were dependent children and granted CCJFS temporary custody. Docket 1: 8A, 10B, 9C.

{¶4} After the trial court granted CCJFS temporary custody, the Temples brought their daughter to see her children during her visitation time and were able to see the children. Tr. 22-23. During this time, the Temples were also able to repair their house. Tr. 19-20, 21. Robin Temple testified that CCJFS came to inspect their home and approved the residence as sound in October 2018. Tr. 25-26. At the time of the inspection, the Temples relied on plugged in heaters to keep the house warm. Tr. 29. After this inspection, the children began having visitation with the Temples in their home. Tr. 26. These visits progressed into overnight stays with the Temples. Tr. 26. Robin testified that CCJFS indicated in January of 2019 that the Temples were going to receive custody of the children. Tr. 27.

---

[1] A.T. is the subject of case 3-19-07. Documents from her case have a letter "A" behind the docket number. G.S. is the subject of case 3-19-08. Documents from her case have a letter "B" behind the docket number. M.T. is the subject of case 3-19-09. Documents from her case have a letter "C" behind the docket number.

{¶5} At some point, CCJFS mentioned that the Temples' heat source was an issue. Tr. 30. The Temples planned to install a propane heater. Tr. 30. On April 19, 2019, the children's guardian ad litem filed a motion with the trial court that requested CCJFS be awarded permanent custody of A.T., G.S., and M.T. Docket 2: 1A, 1B, 1C. On April 23, 2019, the Temples met with a caseworker. Tr. 31. Robin testified that, at around 11:00 A.M., the caseworker told the Temples that they were going to receive custody of the children. Tr. 32. Robin stated that, at roughly 3:00 P.M. on April 23, 2019, the caseworker notified the Temples that they "were no longer an option for placement, because of the heat source." Tr. 32.

{¶6} In response, the Temples installed a new propane heating system for their residence and proceeded to get an attorney. Tr. 33. On May 14, 2019, the Temples filed a motion to intervene. Docket 2: 5A, 5B, 4C. The children's guardian ad litem filed a response to the Temples' motion to intervene on May 21, 2019. Docket 2: 10A, 9B, 8C. On June 7, 2019, the trial court had a hearing on the motion to intervene where Robin and the children's mother testified. Tr. 1. Following this hearing, the trial court denied the Temples' motion to intervene. Docket 2: 13A, 14B, 8C.

*Assignment of Error*

{¶7} The appellants filed their notices of appeal on June 28, 2019. Docket 2: 15A, 14B, 13C. On appeal, the appellants raise the following assignment of error:

-4-

**The trial court committed reversible error, abused its discretion, and its decision was against the manifest weight of the evidence prejudicial to the Appellants when the trial court denied the Appellants' Motion to Intervene and permit them the opportunity to be a party in the proceedings filed by the Appellee requesting that Crawford County Job and Family Services be granted permanent custody of the Appellants' three minor grandchildren.**

*Legal Standard*

{¶8} "A juvenile court may rely on Civ.R. 24 in exercising its discretion under Juv.R. 2(Y)." *In re B.L.*, 3d Dist. Allen Nos. 1-15-65, 1-15-66, 1-15-67, and 1-15-68, 2016-Ohio-2982, ¶ 12.

**Indeed, the Supreme Court of Ohio in *In re H.W.* stated, 'The Rules of Civil Procedure apply to custody proceedings in juvenile court except when they are clearly inapplicable * * *.' *In re H.W.* [114 Ohio St.3d 65, 2007-Ohio-2879, 868 N.E.2d 261] ¶ 11, citing Civ.R. 1(C)(7) and *State ex rel. Fowler v. Smith*, 68 Ohio St.3d 357, 360 (1994). In this case, "[t]he Civil Rules are not 'clearly inapplicable' * * *, especially in light of Juv.R. 45, which provides, 'If no procedure is specifically prescribed by these rules or local rule, the court shall proceed in any lawful manner not inconsistent with these rules or local rule.'" *Id*., quoting Juv.R. 45(B). 'Thus, we turn to the Civil Rules for guidance.' *Id*. *See also In re D.E.*, 9th Dist. Summit No. 27368, 2014-Ohio-5333, ¶ 6 ("Civ.R. 24 governs intervention in civil and juvenile court cases, and provides for two types of intervention: as of right and permissive."), quoting *In re B.O.*, 11th Dist. Lake No.2011-L-055, 2011-Ohio-6210, ¶ 39.**

*Id*. Under Civ.R. 24(A), a party may intervene as of right "(1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action * * *." Civ.R. 24(A). "Civ.R. 24(A)(2) permits intervention as of right only when an

applicant has a legal interest in the action." *Rumpke Sanitary Landfill, Inc. v. State*, 128 Ohio St.3d 41, 2010-Ohio-6037, 941 N.E.2d 1161, ¶ 22.

{¶9} A "legal interest" is "'[a]n interest recognized by law' * * * that is 'legally protectable * * *.'" *Rumpke* at ¶ 14, quoting Black's Law Dictionary (9th Ed. 2009). The Supreme Court of Ohio has held that, "as a general rule, * * * the only avenues through which grandparents may obtain rights relative to their grandchildren" are by filing a motion for temporary custody; by filing a motion for permanent custody; or by filing a motion for visitation. *In re H.W.*, 114 Ohio St.3d 65, 2007-Ohio-2879, 868 N.E.2d 261, ¶ 9.

{¶10} Under Ohio law, a grandparent does not obtain a legal interest in the care and custody of his or her grandchild by virtue of their family relationship. *In re Schmidt*, 25 Ohio St.3d 331, 496 N.E.2d 952 (1986) (holding that grandparent's concern for their grandchild's well-being similarly "cannot be construed as a legal interest that falls within the scope of Civ.R. 24(A)."). For this reason, a grandparent may not, on the basis of their family relationship alone, intervene as of right pursuant to Civ.R. 24(A) in a permanent custody proceeding for a grandchild. *In re S.G.*, 3d Dist. Defiance No. 4-16-13, 2016-Ohio-8403, ¶ 55.

{¶11} If a grandparent cannot intervene as of right under Civ.R. 24(A), the standards for permissive intervention under Civ.R. 24(B) apply. *In re S.G.* at ¶ 56. Under Civ.R. 24(B), permissive intervention is appropriate "(1) when a statute of this state confers a conditional right to intervene; or (2) when an applicant's claim

or defense and the main action have a question of law or fact in common." Civ.R. 24(B). In exercising its discretion under Civ.R. 24(B), the trial court is directed to "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Civ.R. 24(B).

{¶12} "In reviewing the trial court's denial of a motion to intervene, the proper standard of review is whether the trial court's action constituted an abuse of discretion." *Weikle v. Peake*, 3d Dist. Union No. 14-2000-09, 2000 WL 1049310, *4 (July 27, 2000). *See State ex rel. Merrill v. Ohio Dept. of Natural Resources*, 130 Ohio St.3d 30, 2011-Ohio-4612, 955 N.E.2d 935, ¶ 41 (holding that "[w]hether intervention is granted as of right or by permission, the standard of review is whether the trial court abused its discretion in allowing intervention.").

{¶13} "Under the abuse of discretion standard, an appellate court is not to substitute its judgment for the trial court's judgment." *Schroeder v. Niese*, 2016-Ohio-8397, 78 N.E.3d 339, ¶ 7 (3d Dist.). Thus, a mere error of judgment does not rise to the level of an abuse of discretion. *Siferd v. Siferd*, 2017-Ohio-8624, 100 N.E.3d 915, ¶ 16 (3d Dist.). "[T]o constitute an abuse of discretion, the trial court's decision must be unreasonable, arbitrary, or capricious." *Mousa v. Saad*, 3d Dist. Marion No. 9-18-12, 2019-Ohio-742, ¶ 29, quoting *Southern v. Scheu*, 3d Dist. Shelby No. 17-17-16, 2018-Ohio-1440, ¶ 10.

*Legal Analysis*

**{¶14}** The appellants argue that they have grounds to intervene in this permanent custody proceeding because they stood in loco parentis to the children. Some appellate districts in Ohio have held that a grandparent has an appropriate basis from which to intervene in a permanent custody proceeding when that grandparent has stood in loco parentis to his or her grandchild. *In re C.M.*, 4th Dist. Athens No. 17CA16, 2017-Ohio-9037, ¶ 63, citing *In re N.M.*, 2016-Ohio-7967, 74 N.E.3d 852, ¶¶ 13-14 (8th Dist.); *In re C.M.*, 9th Dist. Summit No. 21720, 2004-Ohio-1984, ¶ 21; *In re D.T.*, 10th Dist. Franklin No. 07AP-853, 2008-Ohio-2287, ¶ 11; *In re B. Children*, 12th Clermont No. 2007-06-077, 2008-Ohio-354, ¶ 22.[2]

**{¶15}** Further, a number of appellate districts have, in various cases, held that a trial court abuses its discretion by denying a motion for intervention "where the grandparents have stood in loco parentis to their grandchild * * *." *In re Titionna K.*, 6th Dist. Lucas No. L-06-1232, 2007-Ohio-1861, ¶ 4, quoting *Schmidt, supra*, at 338 (Celebrezze, J., concurring). *See In re D.T.* at ¶ 11; *In re Goff*, 11th Dist. Portage No. 2001-P-0144, 2003-Ohio-6768, ¶ 15. Based on this case law, the appellants assert that they had an appropriate basis from which to intervene in this

---

[2] In *Schmidt*, the Supreme Court of Ohio stated that a grandparent does not have a right to intervene on the basis of their family relation to a grandchild. *Schmidt, supra*, at 337. However, in making this decision, the Supreme Court noted that the record did not indicate that the grandparent seeking to intervene stood in loco parentis to his grandchild. *Id.* at 337. Justice Celebrezze, in his concurring opinion, stated that he believed that a trial court abused its discretion where a grandparent stood in loco parentis to his or her grandchild and the trial court denied that grandparent's motion to intervene. *Id.* at 338. The cases cited by the Fourth District in *C.M.* are various interpretations of these portions of *Schmidt*. *C.M., supra*, at ¶ 63.

permanent custody action because they stood in loco parentis to their grandchildren. Appellants' Brief, 12-13. They further argue that the trial court abused its discretion in denying their motion to intervene because they stood in loco parentis to the children. *Id.*

{¶16} However, the Temples have not established that they stood in loco parentis to these children. "In loco parentis 'exists when [a] person undertakes care and control of another in absence of such supervision by [the] latter's natural parents and in absence of formal legal approval * * *.'" *In re N.M., supra*, at ¶ 15, quoting Black's Law Dictionary 787 (6th Ed.1990).

> **"The term 'in loco parentis' means 'charged, factitiously, with a parent's rights, duties, and responsibilities.'" *State v. Noggle*, 67 Ohio St.3d 31, 33, 1993-Ohio-189, 615 N.E.2d 1040, quoting Black's Law Dictionary (6 Ed. 1990) 787. A person who stands in loco parentis to a child has assumed similar duties to that of a guardian or custodian, only not through legal proceedings. *Id.***

*In re J.B.*, 8th Dist. Cuyahoga No. 103521, 2016-Ohio-5513, ¶ 48, quoting *State v. Burgett*, 3d Dist. Marion No. 9-09-14, 2009-Ohio-5278, ¶ 23.

{¶17} While the record indicates that the Temples were very involved in the lives of their grandchildren, the record does not indicate that the Temples stood in the place of the children's parents. *See Schmidt, supra*, at 337. The Temples acted to support the children's mother in her role as the children's parent by performing various functions and services. However, the record does not reveal that the Temples assumed the mother's role in their grandchildren's lives or the concomitant

"rights, duties, and responsibilities" of parenthood. Black's Law Dictionary (6 Ed. 1990). Moreover, there is no indication that the Temples made the fundamental decisions regarding the children's care. *In re Young*, 5th Dist. Stark No. 2008CA00134, 2008-Ohio-5435, ¶ 18; *In re J.B.* at ¶ 49.

{¶18} The appellants also argue that the trial court erred because it did not consider the best interests of the children in making a determination on the motion to intervene. Under Juv.R. 2(Y), a "party" includes, among others, "a child who is the subject of a juvenile proceeding * * * [and] the child's parent * * *." Juv.R. 2(Y). When considering a motion to intervene under Civ.R. 24(B), the trial court is required to consider whether the other parties to the action will suffer prejudice by the inclusion of the party requesting intervention. Civ.R. 24(B). Thus, in this case, the trial court had to consider the impact that granting this motion to intervene would have on the interests of the children *and* the children's mother.

{¶19} Because the trial court was required to consider the rights of all of the parties to this action under Civ.R. 24(B), the trial court could not make this decision based on the interests of the children alone. The trial court also had an obligation under Civ.R. 24(B) to protect the interests of the children's mother as a party to this action. In its judgment entry, the trial court determined that permitting the Temples to intervene as independent parties to this action would have the effect of giving the children's mother two more party opponents. Docket 2: 13A, 14B, 8C. In addition to CCJFS, the children's mother would have to face the Temples as they sought to

obtain custody of their grandchildren. Docket 2: 13A, 14B, 8C. The trial court found that the intervention of the Temples would, therefore, "unfair[ly] prejudice * * * the interests of the parents." Docket 2: 13A, 14B, 8C. The fact that the trial court determined that the mother's interests would be prejudiced does not mean that the trial court did not consider the interests of the children.

{¶20} Further, the trial court also stated, in its judgment entry, that its denial of the Temples' motion to intervene would not prevent it from further considering the Temples as an alternative option for placement as this process continues. Docket 2: 13A, 14B, 8C. In its judgment entry, the trial court stated:

> **If the maternal grandparents seek placement as an alternative to a grant of permanent custody, then they do not need to be afforded party status to present that * * *. If a child cannot be reunited to the family home in a reasonable time and an alternative placement is required, then the maternal grandparents technically do not need to intervene to be afforded party status to be considered for the placement of the child as they are persons within the preferred class of people the statute provides should be considered for alternate placement.**

Docket 2: 13A, 14B, 8C. From this statement, it appears that the trial court has reserved the determination as to whether it is in the best interests of the children to be placed with the Temples for a later phase in the proceeding. Thus, the trial court's judgment entry indicates that the Temples may still have an opportunity to advocate for their position.

*Conclusion*

**{¶21}** After reviewing the evidence in the record, we do not find any indication that the trial court abused its discretion in denying the appellants' motion to intervene. For this reason, the appellants' sole assignment of error is overruled. Having found no error prejudicial to the appellants in the particulars assigned and argued, the judgments of Juvenile Division of the Crawford County Court of Common Pleas are affirmed.

*** Judgments Affirmed***

**ZIMMERMAN, P.J. and SHAW, J., concur.**

**/hls**